UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

————————————————————————
                                    :
MALCOLM HUNTER,                     :
                                    :
          Plaintiff,                :    Civ. No. 18-12543 (NLH) (AMD)
                                    :
     v.                             :         OPINION
                                    :
                                    :
                                    :
CHIGOZIE IBE, et al.,               :
                                    :
          Defendants.               :
————————————————————————:

APPEARANCES:

Salvatore J. Siciliano, Esq.
Michael J. Hagner, Esq.
Siciliano & Associates, LLC
Attorneys at Law
16 South Haddon Avenue
P.O. Box 25
Haddonfield, NJ 08033

     Attorneys for Plaintiff

Craig Carpenito, United States Attorney
Anne B. Taylor, Assistant United States Attorney
Office of the U.S. Attorney
District Of New Jersey
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101

     Attorneys for Defendants

HILLMAN, District Judge

     Plaintiff Malcolm Hunter is proceeding on his amended

complaint raising claims under Bivens v. Six Unknown Named

Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971); the
Federal Tort Claims Act, ("FTCA"); and the New Jersey
Constitution.  ECF No. 26.  Defendants move to dismiss all
claims except the FTCA medical malpractice claims against the
United States.  ECF No. 27.  Plaintiff opposes the motion.  ECF
No. 29.

　　　For the following reasons, the motion to dismiss is granted
in part.

I. BACKGROUND

　　　For purposes of the motion to dismiss, the Court accepts
the facts alleged in the amended complaint as true.  Plaintiff
was incarcerated in FCI Fort Dix, New Jersey at the times
relevant to this complaint.  ECF No. 26 ¶ 5.  On or about April
10, 2016, multiple inmates attacked Plaintiff.  Id. ¶ 19.
"During that incident he sustained multiple injuries to his head
and hands including a stab wound to the right hand, loss of
consciousness, the fracture of two of his fingers and facial
laceration."  Id. ¶ 20.

　　　After arriving at Health Services, Plaintiff told
Defendants Wawryzniak and Thomas, respectively a paramedic and
lieutenant, that he did not know how he got there as he had been
knocked unconscious and that he believed his hands were broken.
Id. ¶ 22.  He also said that a cut above his left eye would not
stop bleeding.  Id. ¶ 23.  Along with Dr. Sceusa, Defendants

2

Wawryzniak and Thomas applied a steri-strip on the head wound and gave Plaintiff a tetanus shot before placing him in the lieutenant's office to wait for a transfer to the special housing unit ("SHU"). Id. ¶ 24. Plaintiff cleaned his stab wound by himself and told Defendants Wawryzniak and Thomas that he was in pain and needed medical care. Id. ¶ 25. They did not respond to his complaints. Id. ¶ 26. Plaintiff had to sleep on the floor of the SHU holding cell because it was already occupied by another inmate. Id. ¶ 27. No one observed Plaintiff in the cell or otherwise provided him medical attention during the night. Id. ¶¶ 27-28.

Plaintiff was taken to the emergency room the next afternoon. Id. ¶ 29. A radiology report showed that Plaintiff's right fifth finger and left third finger were fractured. Id. Plaintiff was prescribed 600 milligrams of Motrin to be taken every eight hours for pain and a daily dose of an antibiotic, Augmentin. Id. ¶ 30. The discharge instructions "included a mandatory follow-up visit with a primary care physician in two days and a mandatory follow-up visit with an orthopedist in approximately 30 days." Id. ¶ 31. According the amended complaint, neither visit took place and Plaintiff was denied his prescriptions by Defendants Turner-Foster, Ibe, and West. Id. ¶ 32. He did receive pain medication on April 12, 2016. Id. ¶ 33.

3

On April 13, 2016, Plaintiff complained several times that
he needed his antibiotic.  Id. ¶ 34.  Defendant Ibe examined
Plaintiff and prescribed him a different antibiotic and
instructed Plaintiff to take it three times a day and change his
wound dressings three time a week for 21 days.  Id. ¶ 35.
Plaintiff did not receive his dressing changes and did not
receive his antibiotic until about April 16.  Id. ¶ 36.
Plaintiff told Defendant Ibe and other staff members that he
needed an x-ray, but Defendant Ibe allegedly told him "You have
to remember, this is jail."  Id. ¶¶ 37-38.  A nurse purportedly
told Plaintiff sometime in May 2016 "that he was on the list for
an x-ray, that the nurse tried to get Plaintiff for the x-ray,
but that the nurse's boss would not let him do so."  Id. ¶ 39.
Plaintiff received the x-ray on June 1, 2016.  Id. ¶ 40.

On June 8, 2016, Plaintiff had surgery on his hand.  Id. ¶
41.  The doctor told Plaintiff "that he had told staff to bring
Plaintiff for his follow-up appointment and that the delay
caused the need for surgery and that the delay further caused
Plaintiff's finger to never be the same."  Id. ¶ 42.  Plaintiff
was prescribed oxycodone-acetaminophen to be taken every 4 hours
as needed.  Id. ¶ 43.  Plaintiff did not receive this pain
medication until 2:00 p.m. the next day.  Id. ¶ 46.  Follow-up
appointments were scheduled for June 15, 17, and 20, 2016, but

4

they never took place.  Id. ¶¶ 43-44.  According to Defendant
Ibe, the doctor did come to see Plaintiff on June 21, 2016 but
was sent away "due to 'activity in SHU.'"  Id. ¶ 47.  Plaintiff
alleges that Defendants consistently denied him medical care
from June 16 to June 22, 2016.  Id. ¶ 49.

On approximately June 24, 2016, Plaintiff was seen by
Defendant Bynum for a blister that had developed on his finger,
which turned out to be a staph infection.  Id. ¶¶ 52-53.  He did
not receive the medication for the infection until five days
later.  Id. ¶ 54.  Defendant Gibb refused to provide Plaintiff
with water from a drinking fountain to take the medication and
told Plaintiff to take the water from the shower.  Id. ¶¶ 55-57.
Defendant Gibb said Plaintiff refused the medication because he
would not get back into the shower to get water.  Id. ¶ 57.

Plaintiff also alleges Defendants did not treat a wound on
his arm that developed from removing the cast for six hours on
July 12, 2016.  Id. ¶¶ 59-61.  He states he did not receive any
follow-up care from the doctor until November 4, 2016.  Id. ¶¶
64-65.  He alleges his injuries are permanent because Defendants
failed to provide proper medical care at FCI Fort Dix.  Id. ¶
69.

Defendants move for partial dismissal of the amended
complaint.  They argue that Plaintiff has not stated a claim
against the individual defendants and may only proceed against

the United States on his medical malpractice tort claim.

Plaintiff concedes that the claims based on the New Jersey

Constitution may be dismissed but otherwise opposes the motion.

ECF No. 29.

II. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for

failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court

must accept all well-pleaded allegations in the complaint as

true and view them in the light most favorable to the non-moving

party.  A motion to dismiss may be granted only if the plaintiff

has failed to set forth fair notice of what the claim is and the

grounds upon which it rests that make such a claim plausible on

its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Although Rule 8 does not require "detailed factual allegations,"

it requires "more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (citing Twombly, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must

"tak[e] note of the elements [the] plaintiff must plead to state

a claim.  Second, it should identify allegations that, because

they are no more than conclusions, are not entitled to the

assumption of truth.  Finally, [w]hen there are well-pleaded

factual allegations, [the] court should assume their veracity

and then determine whether they plausibly give rise to an

6

entitlement to relief." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted). "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." Id. at 790.

III. DISCUSSION

A.   Statute of Limitations

Defendants argue the constitutional claims must be dismissed as the original complaint was filed more than two years after the claims accrued. "In Bivens actions, the rules for determining the limitation period are the same as those used in 42 U.S.C. § 1983 actions." Torruella-Torres v. FCI Fort Dix, 218 F. Supp. 3d 270, 273 (D. Del. 2016), aff'd sub nom. Torruella-Torres v. Fort Dix FCI, 678 F. App'x 59 (3d Cir. 2017). In New Jersey, the statute of limitations is two years from the claims' accrual. N.J.S.A. 2A:14-2.

Bivens claims accrue "when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. of Delaware v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998). Plaintiff's claims had accrued by July 2016 because he was aware of his injury, the denial of medical care, by that time. "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort,

7

usually at the time the plaintiff suffers an injury." Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). "'The cause of action accrues even though the full extent of the injury is not then known or predictable.'" Wallace v. Kato, 549 U.S. 384, 391 (2007) (quoting 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526–527 (1991)). Accepting the facts alleged in the amended complaint as true, Plaintiff had a complete cause of action as of July 12, 2016, requiring him to file his complaint by July 12, 2018.

Plaintiff submitted his complaint on July 8, 2018, putting him within the two-year period. Moreover, this Court is required to toll the statute of limitations during the administrative exhaustion process. "[B]ecause exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act ("PLRA"), the statute of limitations applicable to [PLRA] actions should be tolled while a prisoner pursues the mandated remedies." Wisniewski v. Fisher, 857 F.3d 152, 158 (3d Cir. 2017). The parties have not addressed the timing of Plaintiff's administrative exhaustion. Thus, even if Plaintiff's claims accrued immediately after the assault on April 10, 2016, the Court cannot rule out the possibility that the complaint was filed within the two-year-period after Plaintiff completed his administrative remedies. As the statute of limitations is an affirmative defense to be pled and proved

by Defendants, the Court declines to dismiss the amended complaint based on the statute of limitations.

B.   Bivens Claims

1.   Sovereign Immunity

Defendants argue the Bivens claims against the United States must be dismissed as it is immune from suit.  The Court agrees.

The United States has sovereign immunity for constitutional claims.  Tucker v. Sec'y of Health & Human Servs., 588 F. App'x 110, 115 (3d Cir. 2014); Perez–Barron v. United States, 480 F. App'x. 688, 691 (3d Cir. 2012) (citing Chinchello v. Fenton, 805 F.2d 126, 130 n.4 (3d Cir. 1986)).  "[W]aivers of federal sovereign immunity must be 'unequivocally expressed' in the statutory text."  United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res., 508 U.S. 1, 6 (1993).  All Bivens claims against the United States, and the Federal Bureau of Prisons to the extent Plaintiff seeks to bring Bivens claims against that agency, are dismissed with prejudice.  FDIC v. Meyer, 510 U.S. 471, 483–85 (1994).

2.   Personal Involvement

Defendants next argue that Plaintiff has failed to state a claim against Dr. Sood, Burlew, Watson, Clarke, Ms. Boyd, Mr. Melsky, Mr. Eckerson, Mr. McCool, Mr. Wilks, Ms. Barton, the Warden of FCI Fort Dix, and the BOP Northeast Regional Director.

9

"To state a claim under Bivens, a claimant must show: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law." Torruella-Torres v. FCI Fort Dix, 218 F. Supp. 3d 270, 272 n.1 (D. Del. 2016).

Plaintiff states Dr. Sood was employed at Fort Dix and "oversaw the medical actions and omissions described herein." ECF No. 26 ¶ 7.  Plaintiff has not alleged any other facts against Dr. Sood, arguing that since Dr. Sood is "liable to Plaintiff through [his] omissions, there are no acts to plead with specificity at this juncture. . . . Defendant Dr. Sood oversaw the negligent conduct described in the complaint and failed to act.  As there is no act to describe, Dr. Sood's omissions can only be plead to a limited degree of specificity, which Plaintiff has done." ECF No. 29 at 7.  "The allegations of [Defendants'] omissions are sufficient to survive the instant motion to dismiss as failures to act by their nature can only be described in limited specificity." Id.

Failure to supervise or failure to intervene are distinct Eighth Amendment claims with specific pleading requirements.  To state a failure-to-supervise claim, Plaintiff must identify a supervisory policy or practice that Dr. Sood failed to employ, and provide sufficient facts that, if true, would show: "(1) the

10

policy or procedures in effect at the time of the alleged injury
created an unreasonable risk of a constitutional violation; (2)
the defendant-official was aware that the policy created an
unreasonable risk; (3) the defendant was indifferent to that
risk; and (4) the constitutional injury was caused by the
failure to implement the supervisory practice or procedure."
Barkes v. First Corr. Med., Inc., 766 F.3d 307, 317 (3d Cir.
2014), rev'd on other grounds sub nom. Taylor v. Barkes, 572
U.S. 822 (2015) (citing Sample v. Diecks, 885 F.2d 1099, 1118
(3d Cir. 1989)).  "[D]eliberate indifference to a known risk
will ordinarily be demonstrated by evidence that the supervisory
official failed to respond appropriately in the face of an
awareness of a pattern of such injuries."  Sample, 885 F.2d at
1118.

          "To be directly liable under a failure to intervene
theory, (1) the plaintiff must have 'demonstrate[d] that her
underlying constitutional rights were violated[,]'; (2) the
officer had a duty to intervene; and (3) the officer must have
had a 'realistic and reasonable opportunity to intervene.'"
Klein v. Madison, 374 F. Supp. 3d 389, 419 (E.D. Pa. 2019)
(quoting Adams v. Officer Eric Selhorst, 449 F. App'x 198, 204
(3d Cir. 2011); Smith v. Mensinger, 293 F.3d 641, 650–51 (3d
Cir. 2002)) (alterations in original).  Plaintiff has not
alleged any facts about Dr. Sood's knowledge of events or

specific occasions in which he failed to act.  Allegations that are no more than conclusions are not entitled to the assumption of truth.  <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 787 (3d Cir. 2016).  Plaintiff has failed to state a claim against Dr. Sood.

Plaintiff's allegations against Burlew, Watson, Ms. Boyd, Mr. Melsky, Mr. Wilks, Ms. Barton, Clarke, the Warden of FCI Fort Dix, and the BOP Northeast Regional Director suffer from similar defects.  Plaintiff vaguely alleges that Mr. Wilks and Ms. Burton "performed or failed to perform the actions and omissions described herein, including but not limited to denying the plaintiff the opportunity to access medical care," ECF No. 26 ¶ 15, but no further factual allegations appear in the amended complaint.  He states Defendants Burlew, Clarke,[1] and Watson, "are and were at all time relevant hereto correctional officers in the receiving and discharge department at FCI – Fort Dix," <u>id.</u> ¶ 10, but nothing else.

Case Manager Ms. Boyd and Counselor Mr. Melsky are alleged to have been "aware, or should have been aware of the actions and omissions described herein and ignored them, or performed or failed to perform the actions and omissions, including but not

---

[1] Defendant "Clarke", an officer in the receiving and discharge department, appears to be a separate person from Defendant "Clark", an officer in the SHU.  ECF No 26 ¶¶ 10, 14.

limited to refusing prescribed medication to the plaintiff and refusing to give the plaintiff an opportunity to access medical care or legal administrative remedies." Id. ¶ 12.  "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).  Plaintiff has not alleged any facts from which this Court could reasonably infer that Plaintiff's case manager and counselor were aware of any problem with Plaintiff's treatment by the medical staff.

Finally, Plaintiff alleges the Warden of FCI Fort Dix and the BOP Northeast Regional Director are liable because they employ the other defendants.  ECF No. 26 ¶ 16.  "[] Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Plaintiff must be able to point to specific facts that indicate these supervisory defendants' personal involvement in the denial of constitutional rights.  Having failed to do that, the constitutional claims against them must be dismissed.

The Court concludes that Plaintiff has alleged the bare minimum of facts against Defendants McCool and Eckerson, e.g.,

they denied care to Plaintiff after his surgery, to allow the
constitutional claims to proceed against them.  The
constitutional claims against Dr. Sood, Burlew, Clarke, Watson,
Ms. Boyd, Mr. Melsky, Mr. Wilks, Ms. Barton, the Warden of FCI
Fort Dix, and the BOP Northeast Regional Director shall be
dismissed without prejudice for failure to state a claim.  Fed.
R. Civ. P. 12(b)(6).

    3.   Fifth Amendment Claim

    Next, Defendants assert that Count 1, alleging violations
of Plaintiff's substantive due process rights, ECF No. 26 at 10,
must be dismissed because his claims of denial of medical care
are redressable under the Eighth Amendment.  Plaintiff argues
the Court should not dismiss the Fifth Amendment claim because
no court has ruled on the merits of either the Fifth Amendment
or Eighth Amendment claim.  ECF No. 29 at 10-11.  He asserts he
should be able to take discovery before the Court dismisses any
claim.

    "[S]ubstantive due process does protect a right to medical
care.  Typically, substantive due process rights are invoked by
pre-trial detainees and other nonconvicted persons seeking
medical care who cannot invoke the Eighth Amendment."  Cooleen
v. Lamanna, 248 F. App'x 357, 362 (3d Cir. 2007) (per curiam).
As a convicted and sentenced prisoner, Plaintiff "can properly
invoke the Eighth Amendment to challenge issues relating to his

14

medical care.  The very viability of his Eighth Amendment claims means that his substantive due process claims are without merit . . . ."  Id.  Courts have consistently held "that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  United States v. Lanier, 520 U.S. 259, 272 n.7 (1997); see also County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998).

Plaintiff's argument that the Court cannot dismiss the Fifth Amendment claims until after discovery is a nonstarter.  Rule 12(b)(6) permits a court to dismiss a claim when the facts alleged would not entitle the plaintiff to relief.  Similarly, § 1915(e) requires the Court to dismiss any action that fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).[2]  It would be a waste of the parties' and the Court's resources to require discovery on a claim that is without merit ab initio.

Moreover, a court has reviewed the merits of Plaintiff's Eighth Amendment claims.  The Honorable Jerome B. Simandle reviewed the initial complaint as required by § 1915(e) and concluded that Plaintiff had sufficiently alleged an Eighth

---

[2] The complaint is subject to § 1915 because Plaintiff is proceeding in forma pauperis.

Amendment claim.  ECF No. 5.  The Fifth Amendment claim is
duplicative and shall be dismissed as to all Defendants.  See
Graham v. Poole, 476 F. Supp. 2d 257, 261 (W.D.N.Y. 2007); Davis
v. Pennsylvania Dep't of Corr., No. 05-1558, 2006 WL 2927631, at
*10 (W.D. Pa. Oct. 12, 2006) ("There is no sustainable
substantive due process claim in the alternative to a claim
governed under the Eighth Amendment standards . . . .").

    4.  Summarization

    Plaintiff's Bivens claims are dismissed with prejudice as
to the United States and the Federal Bureau of Prisons.  Count 1
is dismissed without prejudice as to all Defendants.  The Eighth
Amendment claim is dismissed without prejudice as to Burlew,
Clarke, Watson, Ms. Boyd, Mr. Melsky, Mr. Wilks, Ms. Barton, the
Warden of FCI Fort Dix, and the BOP Northeast Regional Director.

C.  Federal Tort Claims Act

    Plaintiff's next set of claims are brought under the FTCA.
"As the Supreme Court has stated, '[t]he United States, as
sovereign, is immune from suit save as it consents to be sued,
and the terms of its consent to be sued in any court define that
court's jurisdiction to entertain the suit.'"  CNA v. United
States, 535 F.3d 132, 140-41 (3d Cir. 2008), as amended (Sept.
29, 2008) (quoting United States v. Sherwood, 312 U.S. 584, 586
(1941)) (alteration in original).  The FTCA acts as a limited
waiver of that immunity, "and permits suits against the United

States for torts committed by 'any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 332 (3d Cir. 2012) (quoting 28 U.S.C. § 1346(b)(1)).

1.  Scope of Employment

The FTCA "immunizes federal employees for 'negligent or wrongful act[s] or omission[s]' committed while acting within the scope of [their] office or employment.'" Gilbert v. United States Bureau of Alcohol, Tobacco, Firearms & Explosives, 306 F. Supp. 3d 776, 784 (D. Md. 2018) (quoting 28 U.S.C. § 2679(b)(1)) (alterations in original), aff'd, 805 F. App'x 198 (4th Cir. 2020).  "Upon certification by the Attorney General that the defendant employee was acting within the scope of his [or her] office or employment at the time of the incident out of which the claim arose . . . the United States shall be substituted as the party defendant."  28 U.S.C. § 2679(d)(1).  "The scope certification is prima facie evidence that the employee's challenged conduct occurred within the scope of employment, but it is not conclusive."  Schrob v. Catterson, 967 F.2d 929, 936 (3d Cir. 1992).  "Thus, a plaintiff challenging the

certification has the burden of coming forward with specific
facts rebutting it." Id.

The United States submitted a certification that the
individual defendants were acting within the scope of their
employment during the events alleged in the amended complaint,
ECF No. 27-2; therefore, the Court must substitute the United
States as the defendant in the tort claims unless Plaintiff can
rebut that presumption. Plaintiff cursorily alleges that the
individual defendants were acting outside the scope of their
federal employment but fails to offer any specific facts
supporting this argument. ECF No. 29 at 11.

As Plaintiff has not rebutted the presumption with specific
facts, the Court concludes the individual defendants were acting
within the scope of their federal employment during the actions
alleged in the amended complaint. See Riley v. Potter, No. 08-
5167, 2010 WL 125841, at *7 (D.N.J. Jan. 7, 2010) (dismissing
tort claims because "Plaintiffs . . . set forth no facts in
their complaint or pleadings creating a plausible scenario under
which [the tortfeasor] acted outside the scope of employment . .
. .").  The United States is substituted as defendant for all
FTCA claims.

2.   Intentional Infliction of Emotional Distress

Substituted as the sole defendant on the FTCA claims, the United States argues the intentional infliction of emotional distress claim should be dismissed for failure to state a claim.

"[T]o establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (N.J. 1988). "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Restatement (Second) of Torts, § 46 comment d (1965)).

The Court will deny the motion to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff has plausibly alleged Eighth Amendment deliberate indifference claims against individual defendants who have been certified as working within the scope of their employment. A successful Eighth Amendment claim requires the plaintiff to show there has been the unnecessary or wanton infliction of pain, which has been defined as being "inconsistent with contemporary standards of decency . . . ." Estelle v. Gamble, 429 U.S. 97, 103 (1976). Because both an Eighth Amendment claim and a tort claim of

intentional infliction of emotional distress involve conduct
that is "beyond all possible bounds of decency," and the Eighth
Amendment claim is proceeding, the Court will permit the tort
claim to proceed as well.

D.   New Jersey Constitution Claim

The parties agree that the claims based on the New Jersey
Constitution must be dismissed.  ECF No. 27-1 at 19; ECF No. 29
at 11.  Count 10 is therefore dismissed with prejudice.

IV. CONCLUSION

For the reasons set forth above, Defendants' motion to
dismiss will be granted in part and denied in part.  An
appropriate Order follows.


Dated:  July 16, 2020              s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.